## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **STUART S. JOHNSON,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-08-BE-1967-S** |
| | ] | |
| **UNUM PROVIDENT, AND UNUM** | ] | |
| **LIFE INSURANCE OF AMERICA,** | ] | |
| **CLAIM REASSESSMENT UNIT,** | ] | |
| | ] | |
| **Defendants.** | | |

## MEMORANDUM OPINION

This case comes before the court on the Defendants' motions for summary judgment
(docs. 2, 9). Defendants assert that they are entitled to summary judgment, because the Plaintiff's
claims are barred by the relevant limitations periods. The parties have fully briefed the motion,
and the court has reviewed the filings and the applicable law. For the reasons stated below, the
court will GRANT the Defendants' motions for summary judgment (docs. 2, 9). The court will
DISMISS the Plaintiff's Complaint WITH PREJUDICE. A separate order to that effect will be
entered simultaneously.

## FACTS

Plaintiff Stuart Johnson was a participant in a group long-term disability insurance policy
issued by Unum Life Insurance Company of America. Plaintiff obtained coverage under the
Policy through his employment with Sonat Inc., also known as Southern Natural Gas Company.
Plaintiff's claim arises out of Unum Life's denial of his claim for long-term disability insurance
benefits under the Policy. Plaintiff's claims are governed by the Employee Retirement Income

1

Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*

Plaintiff Johnson submitted a claim for benefits under the Policy on or about July 2, 1999. On October 12, 1999, a paid nurse consultant for Unum Life wrote Plaintiff's treating physician requesting clarification of matters relating to Plaintiff's medical condition. On October 25, 1999, Plaintiff's treating physician wrote a detailed letter to Unum Life answering the questions posed by the nurse consultant. Unum Life denied Plaintiff's claim for benefits on October 28, 1999.

Plaintiff asked for a review of the denial decision on November 22, 1999, and, after reviewing the claim decision, Unum Life upheld the denial on March 13, 2000. Plaintiff asked for another review on May 16, 2000, and Unum Life upheld the denial decision for a second time on July 28, 2000. Plaintiff asked for a third review of the decision on December 28, 2000. On January 13, 2001, the Social Security Administration found Plaintiff to be disabled and awarded him benefits. The decision of the SSA was part of the record on review during Plaintiff's third appeal with Unum Life.

On March 22, 2001, after a third and final review of the claim decision, Unum Life informed Plaintiff that the decision to deny his claim for benefits under the Policy would be upheld again. Unum Life's March 22, 2001, letter to Plaintiff informed Plaintiff that he could submit additional information in support of his claim within thirty days after receipt of that letter, otherwise the decision to deny his claim would remain unchanged. The Policy states that "a claimant or the claimant's authorized representative cannot start any legal action: (1) until 60 days after proof of claim has been given; nor (2) more than 3 years after the time proof of claim is required."

On January 11, 2005, Unum Life offered Plaintiff an opportunity to participate in the

Claim Reassessment Process. The Claim Reassessment Process was the result of a Regulatory

Settlement Agreement (RSA) that the Unum Companies entered into with the Department of

Labor and state insurance regulators. The RSA stemmed from the state regulators' investigation

into Unum's alleged history of improperly denying claims. The RSA provided for a Claim

Reassessment Process to allow the Unum Companies to review allegedly wrongful denials of

benefits. The RSA requires Unum to conduct all reviews fairly, including reviews conducted

through the Claim Reassessment Process, giving significant weight to evidence of a Social

Security Administration disability finding, unless Unum had compelling evidence that the SSA

decision was in error.

   Plaintiff returned the Request to Participate Form to Unum Life on January 18, 2005. On

January 25, 2005, Unum Life acknowledged receipt of Plaintiff's Request to Participate Form

and informed the Plaintiff that Unum Life would send him a Reassessment Information Form

(RIF) that he must complete and return within sixty days. On September 13, 2005, Unum Life

sent Plaintiff a letter enclosing the RIF. The RIF, above the place for the claimant to sign on the

eighth page, contained a conditional waiver and release, which included the following language:

> In addition, any applicable statute of limitations is tolled during the pendency of
> the reassessment of my claim; however, I understand that my participation in the
> Claim Reassessment Process will not revive or reinitiate the statute of limitations
> with respect to previous claim decisions.

Unum Life's September 13, 2005, letter also reminded Plaintiff to complete and return the RIF

within sixty days.

   On October 31, 2005, Plaintiff's counsel sent a letter to Unum Life stating that he would

be representing Plaintiff throughout the Claim Reassessment Process and that he would forward

information along regarding Plaintiff's claim as soon as he could. Unum Life responded to Plaintiff's counsel on November 9, 2005, advising him that the RIF was due on November 12, 2005, and that if an extension was necessary to notify Unum Life before that date. Plaintiff's counsel did not receive the letter until November 14, 2005.

On March 31, 2006, four months after the RIF was due, Plaintiff's counsel sent a letter to Unum Life enclosing only three of the eight pages of the RIF. Unum Life responded on May 1, 2006,[1] advising Plaintiff's counsel that the RIF had not been received by the due date and that no further action would be taken on Plaintiff's claim. Plaintiff's counsel asserts that he spoke with someone at the claim reassessment unit by phone and was told that Johnson's file was still open pending a redetermination of the denial of benefits. Plaintiff's counsel and Unum Life exchanged additional correspondence, culminating in Unum Life's October 26, 2006, letter to Plaintiff's counsel once again stating the November 12, 2005, deadline, and advising the Plaintiff that because he had not returned the RIF by the deadline and because he had not requested an extension of that deadline, Unum Life could not take further action on the claim.

Plaintiff Johnson filed this action on October 22, 2008, asserting claims under ERISA arising out of Unum Life's denial of his claim for long-term disability insurance benefits under the Policy. Defendants Unum Group and Unum Life Insurance Company of America moved for summary judgment.

### STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary

---

[1] Unum Life's letter of May 1, 2006, stated that the RIF had been due on November 22, 2005. All other correspondence lists the submission date as November 12, 2005.

judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment it must determine two things: (1) whether any genuine issues of material fact exist, and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23.  Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)   In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

5

475 U.S. 574, 586 (1986).  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.").  The moving party need not present evidence in a form admissible at trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324.  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (citations omitted).

        In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).  The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury.  *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Wash. Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).  Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282.  The non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.*  The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor."

6

*Anderson*, 477 U.S. at 255.  After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

## DISCUSSION

Plaintiff Johnson's claims arise out of Unum Life's denial of his claim for long-term disability insurance benefits under the Policy. Count One is a breach of contract claim, arising from Unum Life's alleged failure to comply with the RSA in denying him benefits through the Claim Reassessment Process. Count Two is a breach of covenant of good faith and fair dealing claim, arising from Unum Life's alleged failure to conduct the Claim Reassessment Process in good faith. In Count Three, Plaintiff asserts that equitable estoppel and/or declaratory relief should preclude Unum Life from asserting any applicable statute of limitations defense that may arise from the language of the Policy. In Count Four, Plaintiff seeks restitution from Unum Life for premiums paid and benefits allegedly wrongfully withheld.  In Count Five, Plaintiff asserts that Unum Life's failure to properly implement the RSA constitutes willful and/or wanton misconduct. In Count Six, Plaintiff asserts that Unum Life breached its duties and obligations under ERISA to pay benefits allegedly due under the Policy.

As an initial matter, the court finds that no genuine issues of material fact remain. The remaining question is whether Defendants are entitled to judgment as a matter of law.

## I.     ERISA Preemption

The court must first determine whether ERISA preempts Plaintiff's state law claims. ERISA completely preempts state law claims when "there [is] a relevant ERISA plan . . . , the plaintiff [has] standing to sue under the plan . . . , the defendant [is] an ERISA entity . . . , [and]

the complaint [seeks] compensatory relief akin to that available under § 1132(a)." *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999). The "key to [preemption] is found in the words 'relate to.'" *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990).

The Supreme Court has explained that "a law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). The Supreme Court has held that no basis exists for "limiting ERISA actions to only those which seek 'pension benefits.'" *McClendon*, 498 U.S. at 145. Nevertheless, the Supreme Court has noted that some laws may affect employee benefit plans in "too tenuous, remote, or peripheral manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n.21. The Eleventh Circuit has stated that "the mere existence of an ERISA plan is not enough for preemption. Rather, the state law in question must make reference to or function with respect to the ERISA plan in order for preemption to occur." *Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1405 (11th Cir. 1994).

In *McClendon*, the Supreme Court found that ERISA preempted state law where the plaintiff sought damages resulting from the loss of his pension benefits plan due to early termination. The Supreme Court found in that case that "the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law. As a result, [the plaintiff's] cause of action relates not merely to pension benefits, but to the essence of the pension *plan* itself." *McClendon*, 498 U.S. at 139-40 (emphasis in original).

Similarly, in *Sanson v. Gen. Motors Corp.*, 966 F.2d 618, 621 (11th Cir. 1992), the Eleventh Circuit found that ERISA preempted state law where the plaintiff asserted a claim for enhanced retirement benefits denied to him as a result of the defendant's alleged fraudulent

8

misrepresentation regarding his eligibility for the enhanced benefits. The Eleventh Circuit noted that "the misrepresentation relates to [the plaintiff's] retirement benefits available under [the defendant's] special retirement plan. The measure of damages would be the amount of benefits [the plaintiff] would have received under the retirement plan. Such a determination of damages demonstrates the relationship between the lawsuit and the special retirement plan." *Id.*

As to Counts One, Three, and Four, the court finds that those causes of action arise under and are preempted by ERISA. Count Six specifically asserts a claim under ERISA. Counts Two and Five do not arise under and are not preempted by ERISA.

Count One, the breach of contract claim arising out of Unum Life alleged failure to comply with the RSA in denying Plaintiff benefits through the Claims Reassessment Process, touches upon not only the existence of a disability plan but also the terms and "essence" of the Policy itself. As such, the court finds that Count One "relates to" an ERISA plan under the *McClendon* rule proffered by the Supreme Court. Additionally, the measure of damages for Count One would be the amount of benefits Plaintiff would have received under the Policy. As such, the court finds that Count One also "relates to" an ERISA plan under the Eleventh Circuit's *Sanson* rule. *See also Goldberg v. Unum Life Ins. Co. of Am.*, 527 F. Supp. 2d 164, 170 (D. Me. 2007) (finding that the plaintiff's breach of the RSA claim was "not only 'relate[d] to' his claim for benefits under the policy, [but also] inseparably connected to that policy").

In Count Three, Plaintiff asserts that equitable estoppel and/or declaratory relief should preclude Unum Life from asserting any applicable statute of limitations defense that may arise from the language of the Policy. Count Three itself refers to the language, or the "essence," of the Policy. As such, the court finds that Count Three "relates to" an ERISA plan under the Supreme

9

Court's *McClendon* rule.

In Count Four, Plaintiff seeks restitution from Policy premiums paid and benefits allegedly wrongfully withheld. Count Four relies upon not only the existence of an ERISA plan, but also calls upon the court to the terms and "essence" of the Policy. Additionally, the amount of restitution due, if any, would be determined by the terms in the Policy. As such, the court finds that ERISA preempts the state law claims in Count Four under both the *McClendon* and *Sanson* rules.

Conversely, Count Two asserts a claim for breach of covenant of good faith and fair dealing arising from Unum Life's alleged failure to conduct the Claim Reassessment Process in good faith, by failing to properly consider his favorable SSA disability determination. Similarly, Count Five asserts that Unum Life's failure to properly implement the RSA constitutes willful and/or wanton misconduct. Unum Life conducted the Claim Reassessment Process pursuant to the RSA, which required Unum to conduct reviews fairly and to consider with great weight SSA disability determinations. The Plaintiff asserts that Unum Life failed to meet its obligations under the RSA to fairly conduct a review of the denial determination and to properly consider the evidence of his favorable SSA disability determination.

Chief Judge Singal of the District of Maine found in a similar case that ERISA preempted the plaintiff's "breach of the RSA" claim, because the plaintiff did *not* "allege that [the defendant] failed to do what it was supposed to do under the terms of the RSA." *Goldberg*, 527 F. Supp. 2d at 170 (emphasis added). Unlike that case, here, Counts Two and Five *do* "allege that [the defendant] failed to do what it was supposed to do under the terms of the RSA." *Id.* As such, the court finds that Counts Two and Five do not "relate to" the underlying ERISA plan as

envisioned by the *McClendon* and *Sanson* courts. As the Eleventh Circuit has stated, where "ERISA applies only peripherally, if at all . . . it would defy common sense to allow ERISA to preempt" the state law claim. *Forbus*, 30 F.3d at 1407. The court, therefore, concludes that ERISA does not preempt the state law claims presented in Counts Two and Five.

## II.   Limitations Periods

Unum Life asserts that the Plaintiff's claims are barred by the 3-year contractual limitations period. ERISA governs the limitations periods for Counts One, Three, Four, and Six (the "ERISA Claims"). State law governs the limitations periods for the non-preempted claims, Counts Two and Five.

### A.   State Law Claims

The Plaintiff asserts that a six-year (72 months) statute of limitations period applies to his state law claims. *See* Ala. Code. § 6-2-34. The court notes that the Plaintiff's claims sounding in tort, instead of contract law, are constrained by the two-year statute of limitations. Ala. Code. § 6-2-38.  However, even assuming *arguendo* that a six-year limitations period applied to all his claims as the Plaintiff asserts, the statute of limitations has run.

The clock began to run on March 22, 2001, when Unum Life notified the Plaintiff that his claim denial was final. The Claim Reassessment Process would toll the statute of limitations pending Unum Life's reassessment of its claim decision. Unum Life asserts that the Plaintiff did not participate in the Claim Reassessment Process, because he failed to submit the requisite updated evidence by the deadline and he failed to request an extension of that deadline. Unum Life relies on the rationale of a recent case from the Eastern District of Pennsylvania in arguing that the Plaintiff did not participate in the Claim Reassessment Process. *See Sadowski v. Unum*

*Life Ins. Co. of Am.*, No. 08-980, 2008 WL 3307142, at *2 (E.D. Pa. Aug. 11, 2008).

In *Sadowski*, the Eastern District of Pennsylvania found that the plaintiff had not participated in the Claim Reassessment Process, and so the statute of limitations was not tolled, because the plaintiff failed to present updated evidence within the 60-day time frame for doing so. The court finds persuasive the rationale of the *Sadowski* ruling. As such, assuming that the Plaintiff did not participate in the Claim Reassessment Process, the six-year statute of limitations expired March 22, 2007, well before the Plaintiff filed his complaint in October 2008.

Even assuming, *arguendo*, that the Plaintiff can be construed as having participated in the Claim Reassessment Process, the limitations period would have been tolled in January 2005, when the Plaintiff received notice of the Claim Reassessment Process and returned the request to participate form. To that point, 46 months of a six-year limitations period would have elapsed. The tolling would have lifted in May 2006, at the latest, when Unum Life explicitly notified the Plaintiff that his updated information had not been received on time, no extensions were requested, and so "no further action can be taken on [this] claim." The Plaintiff did not file his Complaint until October 22, 2008 – 29 months after Unum Life gave him notice that it would be taking no further action on his claim. If the court's math is correct, the Plaintiff filed his Complaint at least 3 months after any six-year limitations period, appropriately tolled, would have expired.

The court determines, therefore, that Counts Two and Five are due to be dismissed as time-barred.

### B.     ERISA Claims

"ERISA does not provide a statute of limitations for suits brought . . . to recover benefits.

Thus, courts borrow the most closely analogous state limitations period." *Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan*, 160 F.3d 1301, 1303 (11th Cir. 1998). "Choosing which state statute to borrow is unnecessary, however, where the parties have contractually agreed upon a limitations period." *Id.* "[C]ontractual limitations periods on ERISA actions are enforceable, regardless of state law, provided that they are reasonable." *Id.* Relying on the Seventh Circuit's finding that a 39-month limitations provision was reasonable in *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869 (7th Cir. 1997), the Eleventh Circuit in *Northlake* found that a 90-day policy limitation provision was reasonable and enforceable. The court, therefore, finds that the three-year limitations period found in the Policy is reasonable in this case.

The Eleventh Circuit has not directly answered the question whether the limitations period is triggered by the date of proof of loss or the date of the final claims decision. However, the Eleventh Circuit has held that "plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Counts v. Am. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997) (citing *Mason v. Cont'l Group, Inc.*, 763 F.2d 1219, 1225-27 (11th Cir. 1985)). Other Circuits have considered and split on the precise issue of what triggers the limitations period. *Compare Abena v. Metro. Life Ins. Co.*, 544 F.3d 880, 882 (7th Cir. 2008) (finding that the limitations period commenced when proof of loss was required to be filed, and that such limitation was reasonable, because the plaintiff had 17 months after he exhausted his administrative remedies to file suit), *with White v. Sun Life Assurance Co. of Can.*, 488 F.3d 240, 247 (4th Cir. 2007) (reading ERISA statutory requirements of exhausting administrative remedies with the provision for judicial review as supporting the conclusion that

limitations periods do not begin to run until a plaintiff has exhausted administrative remedies). The Supreme Court has also noted that ERISA's stated objective of providing "ready access to the Federal courts" disfavors interpretations of ERISA that would strip beneficiaries of the ability to file suit. *Varity Corp. v. Howe*, 516 U.S. 489, 513 (1996) (quoting ERISA § 2(b)).

The Fifth Circuit, which like the Eleventh Circuit also requires ERISA plaintiffs to exhaust administrative remedies before filing suit, has held that the proof of loss triggers the limitations period and that the limitations period should not be tolled during the administrative proceedings. *Radford v. Gen'l Dynamics Corp.*, 151 F.3d 396 (5th Cir. 1998). Nevertheless, Judge Owens of the Middle District of Georgia has found the dissenting opinion of Judge Parker in that case to be better reasoned: "'Common sense and basic fairness dictates that if we are willing to read in an exhaustion requirement, we must toll the limitations period while exhaustion occurs.'" *Jeffries v. Trustees of Northrop Grumman Savs. & Inv. Plan*, 169 F. Supp. 2d 1380, 1382 (M.D. Ga. 2001) (quoting *Radford*, 151 F.3d at 401 (Parker, J., dissenting)). Judge Owen, thus, held that the limitations period "was tolled while Plaintiff exhausted his administrative remedies." *Id.*

In the absence of guidance from the Eleventh Circuit, this court finds persuasive the rationales of the Fourth Circuit and Judge Owen of the Middle District of Georgia. The court finds that tolling the limitations period, whether set by contractual provision or a borrowed state statute of limitations, until a plaintiff exhausts her administrative remedies best comports with the statutory language, as described by the Fourth Circuit in *White*, and the stated objective of ERISA, as described by the Supreme Court in *Varity Corp.*

The court finds that a three-year limitations would be reasonable under Eleventh Circuit

14

precedent. The court also finds that the appropriate limitations period in this case was tolled pending the administrative proceedings. As such, the limitations period in this case began to run on March 22, 2001, after the third and final review of the claim decision. The Plaintiff received notice of the opportunity to participate in the Claim Reassessment Process on January 11, 2005. The Plaintiff completed the Request to Participate Form on January 18, 2005, and Unum Life confirmed receipt of this form on January 22, 2005. The Plaintiff was required to forward updated information to Unum Life, covering the period of time since his claim denial in March 2001 by November 22, 2005. The Plaintiff failed to file the updated information by the deadline, and he failed to request an extension within 60 days of that deadline. As a result, Unum Life removed him from the Claim Reassessment Process.

The court finds that the three-year limitations period expired on March 22, 2004, well before the Plaintiff filed his Complaint on October 22, 2008. The Claim Reassessment Process, which did not begin, if at all, until January 2005, did nothing to revive any claims that had previously expired. Alternatively as described above, even utilizing the six-year statute of limitations advocated by the Plaintiff, the court finds that the limitation period expired, at the latest, in July 2008. The court, therefore, determines that Counts One, Three, Four, and Six are also due to be dismissed as time-barred.

## CONCLUSION

The court will GRANT the Defendants' motion for summary judgment, because the court finds that the Defendants are entitled to judgment as a matter of law. Specifically, the court concludes that the Plaintiff's claims are due to be dismissed as barred by the limitations periods.

The court, therefore, will DISMISS the Plaintiff's Complaint WITH PREJUDICE. The

court will enter an order to that effect simultaneously.

      DATED this 24th day of June, 2009.


                                     _____
                                     KARON OWEN BOWDRE
                                     UNITED STATES DISTRICT JUDGE

16